(No. 21765.— )
EDDINGTON F. COMBES, Admr. *et al.* Plaintiffs in Error, *vs.*
THE INDUSTRIAL COMMISSION *et al.*—(JASPER WALKER,
Defendant in Error.)

*Opinion filed April 22, 1933—Rehearing denied June 9, 1933.*

BERNARD F. MARTIN, for plaintiffs in error.

MCKENNA, HARRIS & SCHNEIDER, (GEORGE A.
SCHNEIDER, and ABRAHAM W. BRUSSELL, of counsel,) for
defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Cook county confirmed an award
of the Industrial Commission in favor of Jasper Walker
against Eddington F. Combes, administrator of the estate
of Dora F. Combes, for accidental injuries sustained by

him arising out of his employment by Dora F. Combes. On the petition of the administrator and the insurance carrier, the Hartford Accident and Indemnity Company, a writ of error was awarded to bring the cause before us for review. The only question raised is whether the injury received was one "arising out of the employment."

Walker had been employed by Dora F. Combes about five years as janitor in an apartment building in Chicago. He resided in the building and was subject to call at all times, day and night. His duties were to clean the building, fire the boiler, see that the doors were locked, attend to the hot water heater and everything in general. At times he collected rent when instructed by his employer to do so. If anyone came around that he did not think was right, his instructions were to call the police. If he saw any strangers around—anything which did not "look presentable"—he was supposed to investigate. If he saw anyone hanging around the halls or any place who looked suspicious he asked them to leave. When he felt suspicious he carried his own pistol. On the morning of October 6, 1931, he had been cleaning and had gone to the basement to empty garbage and take care of the hot water heater. He returned to the second floor about 11:30, picked up his broom and began sweeping. He then heard two men talking. He looked over and saw Emile M. Mixon, a tenant of the building who at times helped with the cleaning. He did not know the other man. He heard argument but did not understand all that was said. There was a bag almost between the two. Walker saw what looked like a white shirt lying on the floor. He proceeded with his sweeping, watching the men also. He was suspicious that the other man was a hold-up man. Mixon had his back to Walker, and the other man was in front of Mixon so that Walker could not see what the other man had in his hand. Mixon suddenly jumped to one side. A shot was fired which was intended for Mixon but struck Walker in the left arm.

Mixon met two men in the building about 11:00 o'clock who were strangers to him. They were carrying a bundle of clothes. Mixon asked them what they were going to do with the clothes. They said they were going to carry them to the laundry. Mixon asked where they lived. They said they lived in the building. He insisted that they show him where they lived and walked with them to the second floor. One of the men said he lived in flat 206. Mixon knew this was false, as flat 206 was the one occupied by Walker. The man set the bag of clothes on the floor and started to open it up. He took a shirt or something out of it and threw it to the floor. Mixon thought he was going to identify himself by the clothes, but instead he brought out a pistol and began to shoot. Walker was standing a few feet behind Mixon and was shot.

An injury not fairly traceable to a risk of the employment as its proximate cause does not arise out of the employment. There must be some causal relation between the injury and the employment. It is not enough that the injured person was at the place of the accident because of his work unless the injury is the result of some risk of the employment. The plaintiff in error, relying upon this principle, insists that Walker's injuries were not the result of any risk of his employment and therefore did not arise out of his employment. He cites a number of cases in which, under varying circumstances, an employee in the course of his employment has been injured or killed by the act of a stranger and in which compensation was denied for the reason that the injuries did not arise out of a risk incident to the employment. In *Chicago and Alton Railroad Co.* v. *Industrial Com.* 300 Ill. 346, the employee, Drischel, was employed at a pumping station, his duties being to pump water into a tank for the use of passenger and freight engines. He lived in a building at the station, and gasoline was kept in another building to run the pumping engine and for his use in cooking but with no authority to sell.

Three men went to the pumping station after ten o'clock at night, woke him, and told him they wanted to buy some gasoline and that it was an emergency case. Drischel went to the oil house and filled a can with gasoline, for which he asked a dollar. They attempted to lock him in the oil house and in the struggle which ensued he was shot and killed. He was not engaged in the performance of any duty to his employer, but, on the contrary, was violating his duty in selling the gasoline. It was therefore held that his injury did not arise out of his employment and that cases holding the killing or injury of a watchman while in the performance of the duties of his employment were not applicable. In *Mix Dairy Co.* v. *Industrial Com.* 308 Ill. 549, a milkman employed to deliver milk and dairy products was shot and killed in the early morning on the premises of one of his customers by an unknown person. In *Jersey Ice Cream Co.* v. *Industrial Com.* 309 Ill. 187, an employee who was delivering ice to customers of the employer from a rear platform of the employer's plant was shot and killed by some unknown person of whose motive there was no evidence. In *Boorde* v. *Industrial Com.* 310 Ill. 62, a telephone operator, during a regular half hour rest period in which the operators had no duties to perform but were left wholly to their own devices and might go freely wherever they chose and leave the premises altogether if they chose, fell down an elevator shaft. In *Jones Foundry Co.* v. *Industrial Com.* 312 Ill. 27, an employee of the foundry company who had been discharged and had been defeated in a suit he had brought against the company before a justice of the peace became deranged and came back to the foundry with two 25-calibre revolvers in his pockets, which he shot promiscuously, killing another employee. In *Sure Pure Ice Co.* v. *Industrial Com.* 320 Ill. 332, the engineer, Manthey, who was killed, was on duty in the night time at the plant of his employer. He was standing on the sidewalk in front of the plant, talking with two others, when a police auto-

mobile came around the corner and one of the others remarked, "Here comes the squad." Manthey said nothing but turned and walked toward the plant. The police car stopped and the officers got out and called to Manthey to halt. He did not halt or answer but walked on. One of the officers called to him to halt, telling him if he did not halt the officer would fire, and he did fire but not at Manthey. Another officer then called him to halt but he walked on to the door of the plant, and the officer then shot and killed him. In *Gooch* v. *Industrial Com.* 322 Ill. 586, an iceman engaged in his employer's business, walking from the truck across the sidewalk to a customer's to inquire if ice was wanted, was struck in the eye by a dart shot from a device used by boys celebrating the Fourth of July, and it was held that the injury did not arise out of his employment since it was not the result of a risk incident to the employment or of a risk incident to the street. In *Spiller* v. *Industrial Com.* 331 Ill. 401, the employee, a garage mechanic engaged in the repair of cars, was injured by a bullet accidentally discharged from a pistol in the hands of a man who had had his car repaired at the garage but had taken it away and at the time of the accident was in the front part of the garage though he had no business there. The accident had nothing to do with the mechanic's employment. In *Becker Roofing Co.* v. *Industrial Com.* 333 Ill. 340, the injury to the employee occurred while he was driving his own automobile to a picnic given by the employer and employees jointly on a holiday, and he was not engaged in any work connected with his employment but was merely attending the picnic with his family.

Many other cases of a character similar to those mentioned might be cited illustrating the endless variety of circumstances and details which occur in cases under the Workmen's Compensation act. The rule is plain enough which requires a causal relation between the employment and the injury, though its application is sometimes difficult.

In the class to which this case belongs, however, the application is reasonably clear. The rule was announced in *Ohio Building Vault Co.* v. *Industrial Board,* 277 Ill. 96, that where the duties of an employee are such as are likely to cause him to have to deal with persons who in the nature of things are liable to attack him, an assault upon him while he is in the performance of such duties by a marauder arises out of his employment. The same rule was announced and followed in *Chicago Dry Kiln Co.* v. *Industrial Board,* 276 Ill. 556, and *Mechanics Furniture Co.* v. *Industrial Board,* 281 id. 530. These were all cases of night watchmen of buildings. The rule was specifically recognized in the *Mix Dairy Co., Jersey Ice Cream Co.* and *Spiller cases, supra,* though it was held inapplicable to those cases. Here the defendant in error was on duty twenty-four hours a day; he had charge of the building; robberies had been committed previously on the premises; when he was employed he was asked if he had a gun and stated that he had; he carried the revolver; he was instructed to call the police if anyone came around who he did not think was right, and if he saw any strangers around, or anything which did not "look presentable," he was supposed to investigate. The affair between Mixon and the other man manifestly did not "look presentable." The other man apparently had no legitimate business in the building. He was there under false pretenses. He attempted to deceive Mixon and was a trespasser and disorderly person whom it was the defendant in error's business to keep out of the building. The defendant in error, seeing that Mixon seemed to have the matter in hand, did not interfere but was watching the outcome, when suddenly the other man pulled out a pistol and fired the shot which injured the defendant in error. He had not anticipated this danger, but it was a real one though unforeseen, and it arose out of his employment. In keeping the building free from trespassers and undesirable vis-

itors there was always the risk, incident to the employment, of what actually occurred, and the award of compensation was justified by the evidence.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*